Shaw, C. J.
This is a petition for leave to file an information in the nature of a quo warranto, against the respondent company, pursuant to the statute 1852, c. 312, § 42, upon the several grounds set forth in the petition.
The petitioner sets forth that he is a stockholder in said company; and also, that they pass through his lands. He must show satisfactorily, that in one or the other of these capacities, he is injured in his private rights. It is the purpose of this statute, to lend the aid of the government in an aggravated case of usurpation and encroachment on private rights by a corporation, by the exercise of a franchise not granted to them.
It is manifestly a very high power, to be exercised only upon extraordinary occasions, and for this purpose it is manifestly placed under the discretion of this court. If it were intended to be a remedy for the ordinary violation of private *600 right, the statute would have given the party aggrieved the power to file his information, as of right. Accompanied as it is with a power to issue an injunction as prayed for in this case, the occasion must obviously be an extraordinary and urgent one, to wan'ant it.
The complaint is, first that the company have violated their charter by issuing stock below par; and by beginning to work before they have completed their stock, by subscriptions of responsible persons; and second, that they did not pursue their charter by making a terminus of one section of the road at the village of Amherst.
I. This statute is not designed to punish a corporation for violations of duty, if not converted into a public prosecution, as it may be by the intervention of the attorney-general; and no judgment of forfeiture is to be rendered. But by § 47, it is provided, that the judgment shall be, that the corporation be perpetually excluded from such franchise or privilege. From what franchise ? Manifestly a franchise not conferred by law, by the exercise of which the private right or interest of any person is injured or put in hazard.
It is exceedingly questionable whether any of the breaches of duty alleged in the petition, in the mode of issuing the stock; in issuing stock below par, as prohibited by § 12 of their charter, is the exercise of a franchise not granted, to the injury of the petitioner’s private right. They are empowered to raise money, in the manner directed; this is a franchise granted; but the argument is, that it is granted conditionally, that is, upon condition that they comply with the requisitions of the law; that these are conditions precedent, and if they are not complied with, the power is not conferred.
This assumes several positions, which, to say the least, are doubtful. 1. That they are conditions. 2. That they are conditions precedent. 3. That they are injurious to the petitioner’s private right and interest.
1. The statutes do not make them conditions, in terms, and there are ample means of enforcing their observance, without holding all the proceedings void, if not complied with. Thev may be directory.
*601 2. They may be conditions subsequent, and then they do not suspend the right to exercise the franchise, but only subject the company to some penalty or forfeiture.
3. But further; we cannot perceive how they can injure the private right of the petitioner. Certainly not as a proprietor, or holder of shares in the stock. On the contrary, it may be .beneficial to him in that capacity, by promoting the enterprise.
But we are then to consider another point, which is preliminary, and that is, the certificate required by the 14th section. This provision renders it less necessary to construe these requisitions about stock as suspensive conditions. This section provides that before they proceed to commence the construction of the road, on the section now in question, a certificate shall be filed, &c. This carries a strong implication, that when such certificate is filed, they may commence, &c., still remaining hable in other respects, to the requisitions and the particular provisions of their act of incorporation, and the general laws referred to, and adopted by it.
If, then, it be inquired what is the legal effect of this certificate, we must answer different in different aspects. Certainly it would not be conclusive of the facts in a criminal prosecution against the corporation. But it is to be taken as primd facie evidence of the facts contained in it, and goes far to rebut and control the allegations of non-performance of the duties set forth in the petition.
But in regard to the supposed breach of duty in not properly issuing the shares, how does this operate to the present injury of the petitioner as a landholder ?
If compliance with the requisitions in regard to the amount subscribed, and the issuing of stock below par, are not conditions precedent to the commencing and making of the road, then whether this money has been subscribed and paid, or not, there is no injury to the petitioner, as a landholder; it makes no difference to him. The law has provided security to him, which is deemed a complete indemnity.
II. As to not making the village in Amherst one terminus.
*602 It is difficult to see how this can be injurious to the petitioner. It is barely possible, that by going to either of the two villages in Amherst, they would necessarily avoid touching his land, and so the present location may be injurious to him, though, without more knowledge of the localities, we cannot perceive how this could be done.
But without dwelling further on this, it appears to us that the actual location is not a violation of their charter.
The whole act is to be taken together as one act, and every part must be construed with reference to every other. The express authority and franchise is to make a railroad from Palmer to Montague, through Belehertown, Amherst, Leverett, &c. There is no other limit between the termini, but the towns. This alone would authorize the railroad company to lay their road where they have laid it. Then the question is, whether this is altered or modified by the provision in the 13th section. That provides that the road thereby authorized, the same road, shall be divided into two sections, one extending from Palmer to the village of Amherst, and the other from Amherst to Montague. "What is the object of this section ? Obviously, we think, to divide the one line already authorized into two parts, so as to allow one to proceed, if the stock for that part could be raised, without the other. It appears to us that it is not intended to fix a new intermediate terminus, but to fix a point at which the whole line authorized to be constructed should be divided. Suppose funds had been obtained, in the first instance, for the entire line ; would it not be competent to run through Amherst without a depot or terminus, at either village; in fact, as it has been run ? Did the legislature intend to depart from this, and vary the route, if one section only were first built? We think not. The second section of the road is described, as from Amherst to Montague, without saying the village in Amherst. But the two parts were intended ultimately to meet, unite, and form one line; and they must, therefore, come.to the same point is Amherst. We think the term “ village of Amherst,” used in this part of the act, was not intended to vary the line of location and route stated in the previous section, but to fix a point of the *603 line northerly from Palmer, to which the first section should extend, if the stock for both should not be filled up.
We think, therefore, there is no sufficient ground to maintain that they have exercised a privilege not granted, in locating this first section of their road so as to extend as far north as the village of Amherst; and that a straight line from one village to the other fixes the line of this section of road with reasonable accuracy. The petitioner’s land, therefore, is within the limits within which they are authorized to locate their road; and, in this respect, they did not exercise a franchise not granted.

Petition dismissed.